[Civ. No. 29788.   Second Dist., Div. Two.   Dec. 21, 1966.]

SAMI SCHONBERG, Plaintiff and Appellant, v. ANNA PERRY, Defendant and Respondent.

William Barnett Spivak for Plaintiff and Appellant.

Ball, Hunt & Hart, Joseph A. Ball and Edgar F. Gross for Defendant and Respondent.

ROTH, P. J.—Sami Schonberg, appellant, a diamond merchant doing business in Antwerp, sued for and recovered from Anna Perry, respondent, a Beverly Hills housewife and his cousin, $35,000. He charged Anna had fraudulently breached a contract involving the purchase of diamonds which she had persuaded him to allow her to negotiate with one Michelangelo Fucile, who was her friend. The contract was made in 1958 in Antwerp or Genoa, or both, and was to be performed in Genoa. Sami also asked for exemplary damages and the jury awarded him $40,000. This appeal is the result of a judgment in a second trial.

In the first trial, held in 1960, the jury returned a verdict of $35,000 compensatory damages and $10,000 exemplary damages in Sami's favor. After the original trial, Anna's motion for a new trial grounded on insufficiency of the evidence to support the jury's verdict, was granted. On appeal, the order was affirmed. (*Schonberg* v. *Perry*, 197 Cal.App.2d 53 [16 Cal.Rptr. 848].) In the matter at bench the trial court granted Anna's motion for a new trial based on insufficiency of the evidence and additionally, on an error of law occurring at trial.

A motion to reconsider the new trial order was filed and concurrently therewith an affidavit of prejudice against the trial judge. The affidavit was considered, the trial judge determined he was not prejudiced and denied the motion to reconsider.

Sami asserts the trial judge erroneously refused to disqualify himself from hearing the motion to reconsider the order granting a new trial. No attempt was made to disqualify the trial judge from hearing the motion for a new trial. A declaration for the purpose of disqualification was filed only as to the motion to reconsider.

We pass quickly over the claimed error of the trial judge's refusal to disqualify himself; first, because the record discloses that all of the circumstances set out in the declaration filed by Sami's attorney were obviously known before a motion for a new trial had been argued, and no effort was made to exploit them prior to a ruling on the motion for a new trial, and in addition, the motion to reconsider the order

was made and heard after the appeal had been taken from the order granting a new trial. (See *Sacks* v. *Superior Court,* 31 Cal.2d 537, 540 [190 P.2d 602]; *Estate of Hanley,* 23 Cal.2d 120, 123 [142 P.2d 423, 149 A.L.R. 1250]; *Linstead* v. *Superior Court,* 17 Cal.App.2d 9, 12 [61 P.2d 355]; 3 Cal.Jur. 2d, § 190, p. 677; Code Civ. Proc., § 946.)

The record shows the order granting a new trial was made and entered on March 3, 1965. The notice of appeal was filed on March 5, 1965, and the motion to reconsider was filed on March 5, 1965. The declaration alleging prejudice and requesting the judge to disqualify himself from hearing the motion to reconsider, was filed on March 16, 1965 and heard on March 17, 1965.

██ Sami contends that the trial court abused its discretion in granting a new trial the second time. He urges, too, prejudicial misconduct by the trial judge during the second trial.

The record does show that the trial judge did at times aggressively participate in the cross-examinaton of Sami, and the questions of the judge did indicate a disbelief in Sami's story. A judge, however, does not sit in a vacuum or as a referee and should, when he deems it necessary to elicit pertinent facts, participate in the direct or cross-examination of any witness. "Within reasonable limits, it is not only the right but the duty of a trial judge to clearly bring out the facts so that the important functions of his office may be fairly and justly performed. (*People* v. *Mendez,* 193 Cal. 39, 45-46 [223 P. 65]; *People* v. *Butterfield,* 40 Cal.App.2d 725, 731 [105 P.2d 628]; *People* v. *Salas,* 17 Cal.App.2d 75, 79 [61 P.2d 771]; *Gerson* v. *Kelsey,* 4 Cal.App.2d 158, 163 [40 P.2d 543, 43 P.2d 266]; *People* v. *Ottey,* 5 Cal.2d 714, 721 [56 P.2d 193].)" (*Estate of Dupont,* 60 Cal.App.2d 276, 290 [140 P.2d 866].)

It would serve no purpose here to set out the record on this facet of the appeal because it is obvious from the jury's verdict that the judge's questions did not in any manner prejudice the jury.

We address ourselves to the merits of the order granting a new trial.

The point of law is predicated upon respondent's theory that her arrangement, if any, with Sami related to the purchase of smuggled diamonds from Fucile, and that such a contract was illegal under Italian law. Respondent urged in

the trial court that the jury should have been instructed on this theory, that it requested such instructions and the trial court refused to give any of them.

There is ample evidence in the record to support a theory that Sami, either directly or through an intermediary (Anna) delivered $35,000 to Fucile as a downpayment on a contract to purchase diamonds smuggled into Italy. Anna requested instructions predicated upon this evidence. They were refused when Sami argued that all the evidence showed was that he had an executory contract with Anna by the terms of which she was to act as a stakeholder for the money involved in the transaction, and that she was not to deliver any money to Fucile until he delivered diamonds to Sami or to her. Sami contended that he was entitled to and did cancel these arrangements with Anna before the money was paid over to Fucile. He asserts she did not return the money after he had cancelled and he is therefore entitled to recover, even if the contract were found to be illegal, since he in effect ordered that it should not be performed. (See *Severance* v. *Knight-Counihan Co.*, 29 Cal.2d 561, 569 [177 P.2d 4, 172 A.L.R. 1107].)

There was evidence to sustain Anna's theory. Evidence of cancellation is in dispute. Also it is not clear whether the contract in question was made in Belgium or in Italy. Irrespective of Sami's theory, there can be no question but that Anna was entitled to instructions on her theory of the case, if the evidence in the record would support a finding of the jury on that issue. (*Daniels* v. *City & County of San Francisco*, 40 Cal.2d 614, 623 [266 P.2d 820]; *Wilson* v. *City & County of San Francisco*, 174 Cal.App.2d 273, 275 [344 P.2d 828]; *Gilbert* v. *Pessin Grocery Co.*, 132 Cal.App.2d 212, 222 [282 P.2d 148]; *Kelley* v. *City & County of San Francisco*, 58 Cal.App.2d 872, 876 [137 P.2d 719].)

The court, on the new trial hearing, confessed its error and stated that the law is clear that respondent was entitled to have the jury instructed on this theory of the lawsuit. We, of course, agree.

The order also specified it was granted upon insufficiency of the evidence. A motion for a new trial predicated upon insufficiency of the evidence to support a judgment is addressed to the sound discretion of the trial judge. (*Linn* v. *Roby*, 129 Cal.App.2d 448, 451 [277 P.2d 67]; *Copley* v. *Putter*, 93 Cal.App.2d 453, 456 [207 P.2d 876].) His action, either in granting or refusing a new trial, will not be

disturbed, "unless it is affirmatively shown or manifestly appears that he has abused the sound discretion confided to him." (*Perry* v. *Fowler,* 102 Cal.App.2d 808, 812 [229 P.2d 46].)

An appellate court will not reweigh the evidence to determine whether it would have granted or denied the motion. It is the trial judge who has seen the witnesses and heard the testimony. It is he who has lived with the case during its courtroom presentation. "The judge presiding at a jury trial not only has seen and heard the witnesses, as has the jury, but he comes to the task of weighing the evidence on a motion for a new trial with a specialized experience in separating the wheat of evidence from its chaff." (*Perry* v. *Fowler, supra,* at p. 811.) His decision is, therefore, made "conclusive upon the appellate court unless there has been an abuse of discretion." (*Marr* v. *Whistler,* 49 Cal.App. 364, 369 [193 P. 600].)

In the case at bench, the trial judge granted respondent's motion for a new trial after two trials in which two juries delivered verdicts for the appellant. The evidence presented was substantially identical at both trials. The concurrence of two juries in their verdicts is a factor which the trial judge must consider, but is not bound by, in ruling on the motion. (*Whitfield* v. *de Brincat,* 35 Cal.App.2d 476, 478 [96 P.2d 156].) The appellate court also takes these facts into consideration in determining whether there has been an abuse of discretion. (*Perry* v. *Fowler, supra,* at page 812.)

Despite the verdicts of two juries, however, ". . . it still remains the duty of the trial judge to exercise sound discretion to harmonize the facts and the law. In *Petroff* v. *Nunes* [136 Cal.App. 416 at page 419 (29 P.2d 293)], the court said: 'Both the judge and the jury have their independent functions to perform, subject only to the sound and sensible restrictions of the law. With due respect for the great benefits derived from our jury system, the conscientious and skilled judge, after all, must assume the final responsibility of seeing that all verdicts substantially conform to justice and law.' " (*Whitfield* v. *de Brincat, supra,* at page 479.)

We have read and analyzed the entire record. There is no doubt that the evidence supports the verdict of the jury. It serves no useful purpose to amplify the facts as set forth in *Schonberg, supra,* page 54 *et seq.* The case is, in our opinion, one in which aside from the question of law pointed out,

everything depends upon the credibility of the witnesses and the inherent probabilities which inevitably flow from that testimony which is believed. On the facts, the case is in all of its aspects one which a jury is peculiarly qualified to decide. Our belief, however, does not mean that a trial judge should abdicate his sworn duty. In *Whitfield, supra,* at page 479, the court said: " '. . . [T]he conscientious and skilled judge . . . must assume the final responsibility of seeing that all verdicts substantially conform to justice and law.' "

The trial judge said in part: "I cannot set aside my own convictions reached in good conscience and after a careful study in review of the evidence simply because two juries had come to a different conclusion, because it is my duty as a judge of this court to grant a new trial, and I am bound to do it under the law when I am convinced that the weight of evidence is contrary to the verdict arrived at by the jury.

"If that power were not vested in the trial Court, motions for new trial would be of no value whatsoever. The Legislature might just as well change them and wipe it off the statutes."

In *Fowler, supra,* at page 810, the court says that the test employed by a trial judge at common law ". . . whether a reasonable man could, upon the evidence, entertain the jury's opinion, (Lord Halsbury in *The Metropolitan Ry. Co. & Wright,* 11 App. Cas. 152 (1886) . . . is not generally employed in any of our American jurisdictions, and certainly not in California."

As the trial judge pointed out to counsel here, quoting from *Demangos* v. *Cannon,* 187 Cal App.2d 624 [10 Cal.Rptr. 24], at page 632: " 'In considering the sufficiency of the evidence upon such motion the court may draw inferences opposed to those drawn [by the jury] at the trial [citation], and where the only conflicts consist of inferences deduced from uncontradicted probative facts, the court may resolve such conflicts in determining whether the case should be retried [citation].' "

At bench, the order granting a new trial was, as has been pointed out, aside from the question of law involved, predicated on the insufficiency of the evidence. We cannot say as a matter of law, as we must, were we to reverse, that there is no substantial evidence which would support a contrary judgment.

In *Jehl* v. *Southern Pacific Co.,* recently decided by this

court, *(Cal.App) 54 Cal.Rptr. 855, we reiterated the case law which sets the limit of our power:

■ "It is thoroughly settled that only when it can be said as a matter of law that there is no substantial evidence to support a contrary judgment, will an appellate court reverse the order of a trial court on the facts. (*Yarrow* v. *State of California*, 53 Cal.2d 427, 434-435 [2 Cal.Rptr. 137, 348 P.2d 687]; *Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689]; *Spencer* v. *Young*, 194 Cal.App.2d 252, 254 [14 Cal.Rptr. 742]; *Miller* v. *Atchison, T. & S.F. Ry. Co.*, 166 Cal.App.2d 160, 165 [332 P.2d 746]; *Harper* v. *Superior Air Parts, Inc.*, 124 Cal.App.2d 91, 94 [268 P.2d 115]; *Patterson* v. *Rowe*, 113 Cal.App.2d 119, 122 [247 P.2d 949]; *McNear* v. *Pacific Greyhound Lines*, 63 Cal.App.2d 11, 17 [146 P.2d 34].)"

The order granting a motion for a new trial is affirmed.

Herndon, J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 15, 1967. Mosk, J., was of the opinion that the petition should be granted.

---

*A hearing was granted by the Supreme Court in *Jehl* v. *Southern Pacific Co.*, on January 18, 1967. The opinion of that court is reported in 66 Cal.2d —— [59 Cal.Rptr. 276, 427 P.2d 988].